[No. 3869. Decided September 7, 1901.]

SOL. H. MAYER, *Appellant,* v. JOHN M. MORGAN *et al., Respondents.*

JUDGMENTS—PRIORITY OF LIENS—SALE ON EXECUTION—DISPOSITION OF SURPLUS PROCEEDS.

Under the statutes of this state authorizing judgment liens upon the debtor's real estate, giving them priority according to

their entry, providing for the sale of such real estate on execution to satisfy any judgment against him and providing for the disposition of the proceeds of such sale, the holder of a junior judgment lien cannot by garnishment obtain priority over an intermediate judgment in the surplus money left after a sale to satisfy the senior judgment, since such money stands in place of the realty, and is subject to the judgment liens in the order of their original priority, notwithstanding the provisions of Laws 1889, p. 88, § 6, subd. 5, authorizing the payment to the judgment debtor of any proceeds remaining after the satisfaction of a judgment.

Appeal from Superior Court, Spokane County.— HON. LEANDER H. PRATHER, Judge. Affirmed.

*Adolph Munter,* for appellant.

*P. C. Shine,* for respondent Traders' National Bank.

The opinion of the court was delivered by

WHITE, J.—On the 14th day of January, 1895, a judgment in the superior court for Spokane county was rendered in favor of James E. Fenton and Daniel W. Henley against John M. Morgan, on which judgment, on December 20, 1899, there remained a balance of $109.65, with interest. On the 22d day of July, 1895, a judgment was rendered in said court in favor of the Traders' National Bank, respondent, against the said John M. Morgan and Marietta E. Morgan, his wife, and each of them, for the sum of $600, with interest and costs. This judgment was duly docketed, as required by law, to become a lien on real estate. This judgment was unsatisfied. On the 16th of September, 1895, the Northwestern and Pacific Hypotheekbank recovered two judgments in the same court against the said Morgan and wife, which judgments were duly docketed in the office of the clerk of the court. On these judgments there were unpaid balances of $743.85 and $1,092.45, respectively. These judgments

were duly assigned to Sol H. Mayer, the appellant. On the 20th of September, 1899, an execution was issued on the judgment recovered against Morgan by said Fenton and Henley. Under this execution certain real estate owned by Morgan and his wife was, on January 27, 1900, sold for the sum of $500. There was left the sum of $348.67 over and above the amount of the Fenton-Henley judgment. At the time of the sale under the execution on the Fenton-Henley judgment, the attorney for the Traders' National Bank of Spokane attended the sale, and immediately thereafter notified the sheriff that the Traders' National Bank claimed the surplus proceeds of said sale by virtue of the lien of its judgment, it being next in order of date and docketing to that under which the real estate was sold. Immediately after said sale and after the sheriff had indorsed the execution as hereinafter stated, the appellant caused a writ of garnishment to issue on one of the judgments of the Northwestern and Pacific Hypotheekbank against Morgan and wife, directed to C. A. Cole, sheriff of Spokane county, and caused the same to be served on the sheriff, appellant having issued execution on said judgment, and placed the same in the hands of said sheriff on January 26, 1900. On January 27, 1900, the Traders' National Bank caused an execution to issue upon its judgment, which, on said day, was placed in the hands of the sheriff, after said writ of garnishment had been served. The sheriff indorsed upon the execution issued by appellant the following:

### SHERIFF'S RETURN.

STATE OF WASHINGTON, County of Spokane, ss.

"I hereby certify that I received the within execution on January 26th, 1900, and on January 27th, 1900, there

came into my hands, as the proceeds of sale of real estate under an execution a surplus of $341.70, which I received, levied upon and applied to the within execution. C. A. Cole, Sheriff of Spokane County, by C. E. Nosler, Deputy."

The words "levied upon and applied to the within execution" were erased and the following words added after the word "received" "and being in doubt as to whom it belonged I paid the same into court, on the 16th day of February, 1900, with the request that the court direct the distribution of the same. I found no other property, real or personal, of the defendants within the county upon which to levy," which words were added above the signature of the sheriff.

On the 16th day of February, 1900, the sheriff filed his answer to said writ of garnishment, and paid to the clerk of said court the sum of $346.67, being the amount of surplus proceeds of said sale admitted in said answer, less $2 paid for filing said answer. On March 2, 1900, the sheriff returned and filed with the clerk of the court an execution issued on appellant's judgment and on respondent's judgment, with the same indorsement on both, except as to the dates of their reception by the sheriff. The cause was heard on the 19th of September, 1900, the parties in open court waiving a trial by jury and agreeing that the cause be tried by the court. The court rendered its decision in favor of the respondent, finding that the surplus proceeds should be treated as land, and that the same should be applied to the payment of the oldest judgment, to-wit, the judgment of the respondent, and judgment was accordingly entered directing the clerk to apply said surplus in the satisfaction of the respondent's judgment, and for costs against the appellant.

The appellant claims that the surplus proceeds became the personal property of the judgment debtor, under subd. 5, § 6, Laws 1899, p. 88, and that, as he was more diligent than the respondent in placing his writ of execution in the hands of the sheriff and in garnisheeing the sheriff, he should receive the proceeds. The laws relating to the lien of judgments and the enforcement of the same must be considered as a whole in determining the meaning of any part, and must receive such a construction as will harmonize all their provisions, if possible. Subd. 5, § 6, Laws of 1899, must not be considered alone, but as a part of a homogeneous whole. Under these familiar rules of construction, there is but little difficulty in solving the question presented. The law regarding the lien of judgments is as follows:

"§ 5132. The real estate of any judgment debtor and such as he may acquire, *shall be held and bound to satisfy* any judgment of the district or circuit court of the United States, if rendered in this state, or of the superior or supreme court, or any judgment of a justice of the peace for the period of five years from the day on which said judgment was rendered, and such judgments shall be a lien thereupon, to commence as follows: Judgments of the superior court of the county in which real estate of the judgment debtor is situated, from the date of the entry thereof; judgments of the district or circuit courts of the United States, if rendered in this state; judgments of the supreme court; judgments of the superior court of any county other than the county in which said judgment was rendered, and judgments of a justice of the peace, from the time of the filing and indexing of a duly certified transcript or abstract of such judgments, as provided by this chapter, with the county clerk of the county in which said real estate is situated."

"§ 5195. The writ of execution shall be issued in the

name of the state of Washington, sealed with the seal of the court, and subscribed by the clerk, and shall be directed to the sheriff of the county in which the property is situated, or coroner when the sheriff is a party or interested, and shall intelligibly refer to the judgment, stating the court, the county where judgment was rendered, the names of the parties, the amount of the judgment if it be for money, and the amount actually due thereon, and shall require substantially as follows:

"1. If it be against the property of the judgment debtor, it shall require the sheriff to satisfy the judgment, with interest, out of the personal property of the debtor, and if sufficient personal property cannot be found, out of his real property *upon which the judgment is a lien.* . . ."

"§ 5197. The sheriff shall indorse upon the writ of execution the time when he received the same, and such execution shall be returnable within sixty days after its date to the clerk who issued the same. And no sheriff shall retain any moneys collected on execution more than twenty days before paying the same to the clerk of the court who issues the writ, under penalty of twenty per cent. on the amount collected, to be paid by the sheriff, the one-half to the party to whom the judgment is payable, and the other half to the county commissioners of the county wherein the action was brought, for the use of the school fund of said county. And the clerk shall, immediately after the receipt of any moneys collected on any judgment notify the party to whom the same is payable and pay over the amount to the said party on demand. On failure to so notify and pay over, without reasonable cause shown for delay, the clerk shall forfeit and pay the same penalty to the same parties as is above prescribed for the sheriff."

"§ 5291. The officer shall strike off the land to the highest bidder, who shall forthwith pay the money bid to the officer, who shall return the money with his execution and his doings thereon to the clerk of the court from which the execution issued, according to the order thereof. . . ."

"If, after the satisfaction of the judgment, there be any proceeds of the sale remaining, the clerk shall pay such proceeds to the judgment debtor, or his representative, as the case may be, at any time before the order is made upon the motion to confirm the sale: *Provided,* such party file with the clerk a waiver of all objections made or to be made to the proceedings concerning the sale; but if the sale be confirmed, such proceeds shall be paid to said party of course; otherwise they shall remain in the custody of the clerk until the sale of the property has been disposed of." Subd. 5, § 6, Laws 1899, p. 88.

An execution is simply a writ by which the judgment of the court is enforced. In the case of real estate the levy of the execution does not create the lien. The lien attaches, under the provisions of the statute at the very moment of the entry of the judgment, and has priority according to entry, and the real estate of the judgment debtor "is held and bound to satisfy the judgment." The land must be sold to the highest bidder for cash. When land is sold, as in this case on an execution issued on the senior judgment, the purchaser takes the land free of liens, subject to redemption only by the judgment debtor, or his successor in interest, or by a creditor having a judgment lien. Laws 1899, p. 89, § 7. The interest of the judgment debtor in the land by the sale is converted into money, and under the statute this money remains in the custody of the court until distributed by the clerk. The levy of the appellant's writ of garnishment on the sheriff, and the indorsement on appellant's writ of execution by the sheriff that he had applied the surplus to the execution of the appellant, were not authorized by law, and in no way controlled the disposition to be made by the sheriff of the money from the sale of the land. The sheriff was obligated by the law to pay the proceeds to the clerk. This was done. The money was then *in custodia legis,* to be re-

tained by the clerk until confirmation of sale or waiver of objection to confirmation, and then paid to the judgment debtor *or his representatives.* The term "representatives" here used is broad enough to include judgment creditors having a lien on the surplus; and when funds come into the control of a court, the court, in the absence of any statute to the contrary, has power to distribute them to the persons equitably entitled thereto. The sale in this case was on an execution issued under the senior judgment, and had the effect of transferring the title to the land sold free from all liens, subject only to redemption. The proceeds, after satisfying the senior judgment, should be treated as land and paid over to the judgment creditors having liens on the land, according to their priority, as the persons justly and equitably standing in place of the judgment debtor. Says Chief Justice MARSHALL:

"The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. The single circumstance of not proceeding on it until a subsequent lien has been obtained and carried into execution, has never been considered as such an act." *Rankin v. Scott,* 12 Wheat. 177, 179.

The judgment of the court below is therefore affirmed.

REAVIS, C. J. and FULLERTON, DUNBAR, HADLEY and MOUNT, JJ., concur.

ANDERS, J., concurs in the result.